IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES W. REINIER, | ) | CASE NO. 5:08 CV 1190 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Charles W. Reinier, for disability insurance benefits.  The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Reinier had severe impairments consisting of sensorineural hearing loss, diabetes mellitus, hypertension, adjustment disorder with depression, and obesity.[1]  The ALJ determined that although Reinier's hearing impairment met a listing level as of January 21, 2004, it did not meet a listing before that time.[2]

For the period from Reinier's claim to onset date of July 1, 2002, until January 21, 2004, the ALJ decided that he had the residual functional capacity to lift and carry 25 pounds

---

[1] Transcript ("Tr.") at 22.

[2] *Id.* at 26.

frequently and 50 pounds occasionally and to stand/walk for six hours in an eight-hour day and sit without limitations.[3]  Because of hearing loss, he could hear loud voices but not soft ones and could perform work involving no more than minimal contact with the public.[4]  The ALJ found no mental limitations.[5]

The ALJ did not make a specific step four finding regarding the ability to perform past relevant work.  She noted that Reinier had past relevant work experience as an owner and general manager of a car dealership and that this job involved skilled work at a sedentary exertional level.[6]

Based on a hypothetical question posed to the vocational expert at the hearing incorporating the residual functional capacity finding discussed above, the ALJ decided that a significant number of jobs existed locally and nationally that Reinier could perform during the time period from July 1, 2002, to January 21, 2004.[7]  The ALJ, therefore, concluded that Reinier was not under a disability during that period.

Reinier asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, he complains that substantial evidence does not support the finding that he did not meet listing

---

[3] *Id.* at 23.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 24.

[7] *Id.* at 24-26.

§ 2.08B before January 21, 2004.  Furthermore, he challenges the residual functional capacity finding as not including sufficient limitations and maintains that substantial evidence does not support the ALJ's evaluation of his credibility.

The Court concludes that the Commissioner's residual functional capacity and credibility findings have the support of substantial evidence but the finding as to the onset of Reinier's disability does not.  That finding must be reconsidered on remand.

## Analysis

**1.    Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[8]

---

[8] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[9]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[10]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      The finding regarding the listing under § 2.08B of Appendix 1**

The listing at issue here is § 2.08, which addresses hearing impairments.

*Hearing Impairments (hearing not restorable by hearing aid) manifest by:*

A.      Average hearing threshold sensitivity for air conduction of 90 decibels or greater and for bone conduction to corresponding maximal levels, in the better ear, determined by the simple average of hearing threshold levels at 500, 1000 and 20 hz. (see 2.00B1); or

B.      Speech discrimination scores of 40 percent or less in the better ear.

This listing provides a qualitative standard based on test results, either the test results meet the listing or they do not.

The parties agree that before January 21, 2004, the test results do not meet the requirements of § 2.08A.  The dispute centers on § 2.08B.

Section 2.08B requires "speech discrimination scores of 40 percent or less in the better ear."  Only one of the pre-January 21, 2004 hearing tests address speech discrimination.  As

---

[9] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[10] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

to the subpart B criteria, this test, administered on November 13, 2003, showed that Reinier had speech discrimination of 32 percent in the right ear.[11] If the right ear was, in fact, "the better ear," then Reinier met the listing as of November 17, 2003.

The Commissioner argues that, because only the right ear was tested for speech discrimination at that time, and Reinier had the burden of proof at step three, there is no evidence in this test that he met the subpart B criteria as of that date. Reinier counters, however, that because the test results before January 21, 2004 suggest that the right ear was slightly better than the left ear, the lack of testing in the left ear is irrelevant.

Although speech discrimination was not tested in the hearing tests done in 1998,[12] 2000,[13] and May of 2003,[14] it does appear that these results could be interpreted as identifying the right ear as the better ear. From my layman's understanding of these test results, they appear to show that the right ear consistently exhibited threshold sensitivity at lower decibels, perhaps evidencing that the right ear was the better ear. This involves the interpretation of raw medical data, which neither the ALJ nor I can do.[15] This interpretation must be done by a medical professional.[16] It is true that the medical expert at the hearing, Frank Cox, M.D.,

---

[11] Tr. at 221-22.

[12] *Id.* at 148.

[13] *Id.* at 149.

[14] *Id.* at 150.

[15] *Deskin v. Comm'r of Soc. Sec.*, --- F. Supp. 2d ---, 2008 WL 5744118, *2-3 (N.D. Ohio Mar. 31, 2008).

[16] *Id.*

generally testified that Reinier's hearing impairment did not meet or equal a listing before January 21, 2004.  Although Dr. Cox did briefly discuss discrimination, he did not identify or comment on the November 17, 2003, test result.  Although this is a close call, it appears to me that the test results of November 17, 2003, could constitute substantial evidence that Reinier met the § 2.08B criteria as of that date.  Dr. Cox's opinion, like that of any medical opinion in a disability case, must be consistent with the objective medical evidence.  Because the raw medical evidence here if interpreted could support the finding of an earlier onset date, Dr. Cox's conclusory opinion in isolation cannot suffice as substantial evidence to the contrary.

I understand that a remand to obtain an interpretation of the November 17, 2003, test results will have only a minimal effect in this case – moving back the onset date less than two months.  Nevertheless, on this record, such a remand is unavoidable.

### 3. The residual functional capacity and credibility findings

Moving to Reinier's challenges to the ALJ's residual functional capacity finding and the credibility finding as it affects the residual functional capacity finding, I conclude that these findings have the support of substantial evidence.

The ALJ reasonably relied upon the ample medical evidence in the record in determining that Reinier's physical impairments did not cause limitations beyond those set forth in her residual functional capacity finding.  As an initial matter, Reinier errs in noting the types of jobs identified by the vocational expert.  He asserts the vocational expert opined that he could perform the jobs of an order clerk, small products assembler, surveillance man

or watchman.[17]  The vocational expert actually testified that Reinier could perform the jobs of laundry worker, store/warehouse laborer, and industrial cleaner.[18]

In additional, Reinier complains the vocational expert should have only considered jobs that would allow him to stand for only four hours a day, as reflected in the hypothetical posed by his counsel (but not the ALJ) at the hearing.[19]  There is no medical evidence supporting such a limitation and, indeed, Reinier cites to no such evidence.  Instead, the medical expert, Dr. Cox, testified there was "no physical reason" that Reinier could not lift 50 pounds occasionally and 25 pounds frequently,[20] and that his obesity would not affect his ability to walk or lift.[21]

Reinier argues he should not be considered able to sustain an eight-hour day on his feet because he had never done so before.  There is no medical evidence that he did not previously do such work because of physical impairments.  Rather, a reasonable person could conclude that Reinier worked in a sedentary job for 22 years because he made a very good living at it,[22] not because of the limitations of physical impairments.

---

[17] ECF # 14 at 14.

[18] Tr. at 314.

[19] ECF # 14 at 13-14.

[20] Tr. at 303.

[21] *Id.* at 305.

[22] *Id.* at 57.

The ALJ found that Reinier's statements about intensity, persistence, and limiting effects of his symptoms were not entirely credible.[23]  Reinier challenges this finding as lacking the support of substantial evidence.

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[24]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration.  Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[25]  The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[26]  Where the objective medical evidence does not

---

[23] *Id.* at 24.

[24] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[25] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732 (N.D. Ohio 2005).

[26] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.[27]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence.  When a claimant presents credible evidence of these factors, such proof might justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad.  The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[28]  A court may not disturb the ALJ's credibility determination absent compelling reason.[29]

An ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible and, if not, explain the finding in terms of the factors set forth in the regulation.[30]  If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[31]  The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she

---

[27] *Cross*, 373 F. Supp. 2d at 732.

[28] *Buxton*, 246 F.3d at 773.

[29] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[30] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[31] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

considered all relevant evidence.[32]  The articulation should not be conclusory;[33] it should be specific enough to permit the court to trace the path of the ALJ's reasoning.[34]

Here the ALJ did provide a unified statement about her reasons for discounting Reinier's credibility, which is not conclusory and does permit the discernment of the path of the ALJ's reasoning.[35]

The ALJ provided a relatively lengthy analysis of how Reinier's complaints about dizziness were contradicted by the medical records.[36]  The ALJ also grounded her overall assessment of Reinier's functioning on the medical opinions and other objective tests.[37]  The ALJ set forth a reasonable unified explanation for her conclusion that Reinier was able to perform a properly modified range of work on or before January 21, 2004, and for concluding that Reinier was disabled after that date.  To be sure, as pointed out by the briefing, evidence does exist supporting Reinier's complaints.  The evidence, however, is such as to prevent a "directed verdict," and, therefore, I must defer to the Commissioner's finding.

---

[32] *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1054 (E.D. Wisc. 2005).

[33] SSR 96-7p, 61 Fed. Reg. at 34384.

[34] *Blom*, 363 F. Supp. 2d at 1054.

[35] Tr. at 23-24.

[36] *Id.* at 24.

[37] *Id.*

**Conclusion**

Based on the foregoing, the decision of the Commissioner denying Reinier's application for disability insurance benefits is affirmed in part and reversed in part.  The case is remanded for the limited purpose of reconsidering the disability onset date in light of the results of the hearing testing conducted on November 17, 2003.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[38] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.

Dated:  April 28, 2009                    s/ William H. Baughman, Jr.
                                          United States Magistrate Judge

---

[38] 28 U.S.C. § 2412(d)(1)(A).